UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| D.S.,<br><br>                    Petitioner,<br><br>        v.<br><br>JULIO HERNANDEZ et al.,<br><br>                    Respondents. | CASE NO. 2:26-cv-01328-JNW<br><br>ORDER GRANTING IN PART<br>HABEAS PETITION |

## 1.  INTRODUCTION

This matter comes before the Court on Petitioner D.S.'s amended petition for a writ of habeas corpus, Dkt. No. 20. On April 21, 2026, Respondents filed a notice of intent to remove D.S. from the United States no earlier than 48 hours. Dkt. No. 5. D.S. timely filed a motion for a temporary restraining order requesting a stay of his imminent deportation to Laos. Dkt. No. 6. The TRO and the habeas petition are now fully briefed, and the matter is ripe for resolution. For the reasons stated below, the Court GRANTS IN PART the petition.

ORDER GRANTING IN PART HABEAS PETITION - 1

## 2. BACKGROUND

D.S. is detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. D.S. immigrated with his family to the United States on or about May 16, 1980, when he was just two years old. Dkt. No. 16 ¶ 3. D.S. is married with a child. His wife and child are both citizens. Dkt. No. 1 ¶ 21. D.S. is a stateless individual. Respondents contend that he is a native and citizen of Laos, though his Notice to Appear indicates that he is a "native of Thailand" and "citizen of Laos." Dkt. No. 14-1 at 2. In April 2002, D.S. was convicted of criminal offenses and sentenced to 25 months in prison. Dkt. No. 11 ¶ 4. Following his sentence, D.S. was placed in removal proceedings and issued Notice to Appear ("NTA"). *Id.* ¶ 5. On August 25, 2003, an immigration judge ("IJ") ordered D.S. removed to Laos. *Id.* ¶ 6. His removal order became final on December 23, 2003. Dkt. No. 14-4 at 2. Respondents were unable to effectuate his removal to Laos, so D.S. was released on an Order of Supervision ("OSUP") on April 23, 2004. Dkt. No. 14-4.

On April 13, 2026, while driving to work in Portland, Oregon, Dkt. No. 1 ¶ 22, D.S. was taken into custody by Immigration and Customs Enforcement (ICE) and transported to the NWIPC. Dkt. No. 16 ¶ 5. That same day, ICE revoked D.S.'s OSUP because "ICE has obtained a travel document and scheduled your removal to take place no later than April 30, 2026." Dkt. No. 14-5 ("Notice of Revocation of Release"). Also on that day, Respondents provided D.S. with an informal interview to respond to the reasons for the revocation. Dkt. No. 14-6. On April 20, 2026, D.S. was served a Notice of Imminent Removal informing him that ICE would not

ORDER GRANTING IN PART HABEAS PETITION - 2

conduct a custody review and that it was in possession of his travel documents and expects his removal to occur in April 2026. Dkt. No. 14-7.

Enforcement and Removal Operations ("ERO") previously had a valid Laotian travel document for D.S., however they attempted to effectuate his removal before D.S.'s petition was ripe for review. Dkt. No. 16 ¶¶ 6–7 (Declaration of Deportation Officer Joseph Carnevale). D.S.'s travel document is no longer valid as of April 30, 2026. Dkt. No. 15 (Notice and Supplement to Return Memorandum). Respondents state that on May 5, 2026, ERO has requested a new travel document and "anticipates Laos will reissue a new travel document as Laotian officials have in other recent, similarly situated cases to Petitioner. ERO continues to see Laos reissuing travel documents in cases where the period of validity expires before the person can travel on the prior one issued." Dkt. No. 16 ¶ 8. And upon receipt of this anticipated travel document, "ERO is prepared to book another removal flight for [D.S.]." *Id.* ¶ 9.

### 3.   LEGAL STANDARD

Federal courts may grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is

ORDER GRANTING IN PART HABEAS PETITION - 3

unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief" when challenging incarceration by the state under 28 U.S.C. § 2254). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

## 4. DISCUSSION

### 4.1 D.S. may proceed under pseudonym.

D.S.'s unopposed motion to proceed under pseudonym is permitted. There is no prejudice to Respondents as D.S. has disclosed his identity to them and the prejudice to the public is limited. Thus, the Court finds D.S.'s need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). D.S. may proceed in pseudonym when it comes to his identity, however he cannot conceal facts such as the country of his nationality and citizenship. Dkt. No. 1 at 3 (for example, referring to "Country A").

### 4.2 D.S.'s continued detention violates due process.

In *Zadvydas*, the Supreme Court held that 8 U.S.C. § 1231(a)(6) "does not permit indefinite detention." 533 U.S. at 689. Rather, it allows detention only for "a

period reasonably necessary to bring about that [noncitizen]'s removal from the United States." *Id*. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699. The Court established six months as the "presumptively reasonable" period of post-removal-order detention. *Id*. at 701. After six months, "once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. Importantly, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*. The Government's burden to justify continued detention thus becomes increasingly demanding over time.

D.S. is detained under 8 U.S.C. § 1231(a)(6), which authorizes continued detention after the 90-day removal period for certain categories of noncitizens or release under conditions of supervision. *See Zadvydas*, 533 U.S. at 682. His removal order became final on December 23, 2003. He was detained for about four months in 2004, and he has now been detained since April 13, 2026. Dkt. No. 13 at 8; Dkt. No. 17 at 6. When calculating the length of a noncitizen's detention for the purpose of determining reasonableness under *Zadvydas*, the Court aggregates the noncitizen's stretches in immigration detention; it does not count time spent out of detention or in detention unrelated to immigration. *See, e.g., Jaranow v. Bondi*, No. C25-2396, 2026 WL 35864, at *3 (W.D. Wash. Jan. 6, 2026).

This Court joins other courts that have found that the six-month presumptively reasonable period of detention described in *Zadvydas* does not mean

ORDER GRANTING IN PART HABEAS PETITION - 5

that detention is always reasonable up until the six-month period. *See Trinh v. Homan*, 466 F. Supp. 3d 1077, 1092 (C.D. Cal. 2020) ("At no point did the *Zadvydas* Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period."); *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018) ("The Supreme Court in *Zadvydas* outlined a 'guide' for approaching these detention challenges ... not a prohibition on claims challenging detention less than six months") (quoting *Zadvydas*, 533 U.S. at 700–01); *Uzzhina v. Chestnut*, No. 1:25-cv-01594-DAD-SCR, 2025 WL 3458787, at *3 n.3 (E.D. Cal. Dec. 2, 2025) ("The fact that a noncitizen has been held in-custody less than six months does not foreclose a claim that his or her detention is unlawful under *Zadvydas*."); *Medina v. Noem*, 794 F. Supp. 3d 365, 375 (D. Md. 2025) (noting that "what *Zadvydas* did make clear was that it was adopting a presumption—not a conclusive bar to adjudication of whether continued detention is authorized that lifts only after six months have elapsed"); *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) ("This six-month presumption is not a bright line, however, and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits."). If we follow Respondents' proposed interpretation, "the Government would be permitted to detain noncitizens ordered removed for up to six months even when their removal is impossible." *Zavvar v. Scott*, No. CV 25-2104-TDC, 2025 WL 2592543, at *5 (D. Md. Sept. 8, 2025).

Courts have granted *Zadvydas* relief before six months when the petitioner provides clear evidence showing that removal is not reasonably

ORDER GRANTING IN PART HABEAS PETITION - 6

foreseeable. *Ghamoushi-Ramandi v. Noem*, No. 26CV1758-LL-SBC, 2026 WL 984278, at *3 (S.D. Cal. Apr. 13, 2026) (collecting cases). D.S. argues that his continued detention violates due process because there is no significant likelihood he will be removed in the reasonably foreseeable future. The Court agrees. D.S. has shown that he cannot be removed to Laos. He does not have a valid travel document to travel to Laos, nor does he have a Laotian passport. Respondents argue that D.S.'s removal to Laos is reasonably foreseeable, however they have not provided any details beyond a vague statement that they have made a request for renewed travel documents with the Laotian government. There are no assurances of whether those documents will be received and if so when and how soon thereafter travel arrangements can be scheduled.

Respondents argue that D.S.'s removal is imminent because ICE has a valid travel document and can place D.S. on the "next available flight" as soon as permitted. Dkt. No. 13 at 8. However, this is incorrect, and Respondents concede this point in their supplemental brief—that D.S's travel document to Laos expired on April 30, 2026, a few days before the Return was filed. Dkt. Nos. 13, 15. The Court notes that Respondents' original Return represented three times that ICE possessed a "valid" travel document for D.S.—a representation that was inaccurate at the time it was made. Dkt. No. 13 at 2, 6, 8. This undermines the Government's credibility on the critical question of whether removal is reasonably foreseeable.

Thus, Respondents do not have travel documents for D.S., they only have anticipation that they will be able to secure those documents. That is not enough. Under *Zadvydas*, the Government bears the burden of providing affirmative

ORDER GRANTING IN PART HABEAS PETITION - 7

evidence that removal is reasonably foreseeable—not merely conclusory statements that they anticipate or hope to effectuate D.S.'s removal. The evidentiary deficiencies in DO Carnevale's declaration are significant. He does not attest to any facts within his personal knowledge regarding Laos's willingness to issue travel documents. Instead, he relays that ERO "anticipates Laos will reissue a new travel document" simply because it has done so in "recent, similarly situated cases to [D.S.]" and because it has done so before for past holders of expired travel documents. Dkt. No. 16 ¶ 8. DO Carnevale does not explain how D.S. is similarly situated to those other cases or the basis for his expectation that travel documents will soon be secured.

Courts in this district have frequently denied relief where there is no evidentiary support of valid travel documents. *See, e.g., Do v. Scott*, No. C25-2187RSL, 2025 WL 3470327, at * 2 (W.D. Wash. Dec. 3, 2025) (removal is not in the reasonably foreseeable future where travel document request is only in the preparation stages); *Tran v. Bondi*, No. C25-01897-JLR, 2025 WL 3140462, at *3 (W.D. Wash. Nov. 10, 2025) ("ICE is not permitted to hold [petitioner] indefinitely while it waits for travel documents from Vietnam."); *Abubaka v. Bondi*, No. C25-1889RSL, 2025 WL 3204369, at * 4 (W.D. Wash. Nov. 17, 2025) (removal is not in the reasonably foreseeable future where petitioner shows that the process for procuring travel documents is protracted and uncertain).

At most, Respondents have proved that "there is at least some possibility" that Laos, "at some point" might accept D.S. *Abubaka v. Bondi*, No. 25-cv-1889-RSL, 2025 WL 3204369, at *5 (W.D. Wash. Nov. 17, 2025) (quoting *Nguyen v. Scott*,

ORDER GRANTING IN PART HABEAS PETITION - 8

796 F. Supp. 3d at 725 (W.D. Wash. 2025)). But as other courts in this district have found, "[t]hat is not the same as a significant likelihood that [the petitioner] will be accepted in the reasonably foreseeable future." Id. (quoting *Nguyen*, 796 F. Supp. 3d at 725); *see also Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006) (Government failed to meet *Zadvydas* standard on rebuttal because it provided "no substantive indication regarding how or when it expect[ed] to obtain the necessary travel documents" to remove the petitioner). Because there is no significant likelihood of removal in the reasonably foreseeable future, D.S.'s continued detention is no longer authorized by statute and violates due process. He must be released.

### 4.3    D.S.'s remaining requests for relief.

First, D.S. argues that the revocation of his OSUP violated due process because he was not afforded notice and pre-deprivation hearing. Dkt. No. 17 at 3–4. Because the relief requested, release, is the same as the relief ordered for D.S.'s *Zadvydas* claim, the Court does not reach this issue. The Court does, however, exercise its equitable authority to impose conditions on D.S.'s release and any future re-detention, as set forth in the Conclusion below.

Courts in this district routinely attach re-detention conditions to *Zadvydas* relief to ensure that the remedy is not rendered meaningless by immediate re-detention on the same speculative basis the court has already found insufficient. *See, e.g., Chen v. Hermosillo*, No. 2:26-cv-00067, 2026 WL 252077, at *3–4 (W.D. Wash. Jan. 30, 2026) (ordering release on Zadvydas grounds with conditions

prohibiting re-detention without written notice and a meaningful opportunity to respond); *Abghari v. Hermosillo*, No. 2:26-cv-00269-JNW, 2026 WL 503317, at *5 (W.D. Wash. Feb. 24, 2026) (same).

Second, D.S. argues he should be allowed to remain in the country during the pendency of his motion to reopen his removal proceedings before the Board of Immigration Appeals ("BIA"). Dkt. No. 17 at 9–13. This request falls within the discrete actions barred by 8 U.S.C. § 1252(g), which deprives courts of jurisdiction over claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]." *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("*AADC*"). The Ninth Circuit has held that challenges to the Attorney General's exercise of discretion to execute a removal order are barred. *Rauda v. Jennings*, 55 F. 4th 773, 778 (2022) (denying petitioner's request to seek a stay of removal pending the Board of Immigration Appeal's resolution of his motion to reopen). D.S.'s request to enjoin his removal so that he can remain in the country while his motion before the BIA remains pending effectively overrides the Attorney General's discretionary power to "execute [a] removal order" and "commence proceedings"— relief this Court cannot grant under Section 1252(g). For the same reasons, D.S.'s request in his motion for a temporary restraining order to enjoin his removal from Laos is denied. Dkt. No. 6.

ORDER GRANTING IN PART HABEAS PETITION - 10

**4.4    Amended petition.**

On May 11, 2026, D.S. filed an Amended Petition under Rule 15 with the sole amendment being that D.S. is now alleged to be stateless rather than a citizen of a particular country. Dkt. No. 20 at 1 n.1. The Amended Petition is the operative pleading before this Court. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) ("[A]n amended pleading supersedes the original pleading.") This amendment, however, does not alter the Court's analysis, as the Court's finding rests on the length of detention, the absence of valid travel documents, the speculative nature of the Government's removal prospects—conclusions that apply regardless of how D.S.'s nationality is characterized. When an amended pleading is "substantially identical" to the original, the court may treat the briefing already on file as directed to the amended pleading rather than require respondents to brief the matter again. *See Zimmerman v. PeaceHealth*, 701 F. Supp. 3d 1099, 1108 (W.D. Wash. 2023).

The amended petition is identical to the original petition in every respect save for the lone allegation about D.S.'s statelessness. Even construing that allegation in Respondents' favor (i.e., assuming D.S.'s stateless status has no bearing on his due process claim), the Court reaches the same result. Further briefing from Respondents on this point would thus serve no purpose.

## 5.   CONCLUSION

1. The Amended Petition for a Writ of Habeas Corpus is GRANTED IN PART. Dkt. No. 20.

2. Respondents must release Petitioner from custody within TWENTY-FOUR (24) hours of this Order, subject to the conditions of his prior OSUP.

3. Respondents may not re-detain Petitioner without providing written notice of the basis for proposed re-detention in advance and a meaningful opportunity to respond, except as authorized under 8 C.F.R. § 241.13(i)(1)–(2). The mere passage of time, the resubmission of a travel document request, or the anticipation that Laos may reissue a travel document does not, without more, constitute changed circumstances warranting re-detention.

4. Respondents must file a status update within FORTY-EIGHT (48) hours of this Order, confirming that Petitioner has been released from custody.

5. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. See Daley v. Ceja, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).

6. All other requested relief is DENIED without prejudice, as set forth in this Order.

Dated this 20th day of May, 2026.

Jamal N. Whitehead
United States District Judge

ORDER GRANTING IN PART HABEAS PETITION - 12